**IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WILLIE McRAY, <br><br> Plaintiff, <br><br> v. <br><br> THOMAS ROSS, Director of Public Safety for the Village of Bolingbrook, in his individual and official capacities; Deputy Chief KENNETH TEPPEL, in his individual and official capacities; Commander MICHAEL ROMPA, in his individual and official capacities; Lieutenant RICHARD HILLIARD, in his individual and official capacities; Commander DENNIS HESS, in his individual and official capacities; Supervisor LINDA LAKETA, in her individual and official capacities; the VILLAGE OF BOLINGBROOK, municipal corporation; and the VILLAGE OF BOLINGBROOK BOARD OF FIRE AND POLICE COMMISSIONERS; BARBARA PROVO, Chairwoman of the Board of Fire and Police Commissioners; MAJOR JONES, Vice-Chairman of the Board of Fire and Police Commissioners; PREM LALVANI, Secretary of the Board of Fire and Police Commissioners; SANDRA BALDASSANO, Member of the Board of Fire and Police Commissioners; MAURICE BINNS II, Member of the Board of Fire and Police Commissioners; RAY MACRI, Member of the Board of Fire and Police Commissioners: and, GRETCHEN SCHROETER, Member of the Board of Fire and Police Commissioners, <br><br> Defendants. | No. 17 C 1588 <br><br> Judge Edmond E. Chang <br><br> Magistrate Judge Mary M. Rowland |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF COMPLAINT FOR ADMINISTRATIVE REVIEW**

Defendants, **VILLAGE OF BOLINGBROOK BOARD OF FIRE AND POLICE COMMISSIONERS, BARBARA PROVO, MAJOR JONES, PREM LALVANI, SANDRA BALDASSANO, MAURICE BINNS II, RAY MACRI, and GRETCHEN SCHROETER (the "BOFPC Defendants")**, by and through their attorneys, Frank B. Garrett III and Nikoleta Lamprinakos of ROBBINS SCHWARTZ NICHOLAS LIFTON & TAYLOR, LTD., submits this response to Plaintiff's Memorandum in Support of Complaint for Administrative Review and request that this Complaint/claim be dismissed and/or denied for the below reasons:

## I. INTRODUCTION

By decisions issued February 13 and March 18, 2017, and after 9 days of hearing, the Board of Fire and Police Commissioners of the Village of Bolingbrook, Illinois, voted to discharge the Plaintiff for violating various orders and rules and regulations of the Bolingbrook Police Department. The Board determined that the Department met its burden in showing through evidence and testimony, that Plaintiff engaged in several acts of misconduct and violated direct orders of the Department and order issued by his superiors.

On April 26, 2017, Plaintiff filed an Amended Complaint with this Court. Count VII [sic] VI of this Amended Complaint purports to form the basis of Plaintiff's Request for Administrative Review of his dismissal by this Court. For the reasons set forth herein, Plaintiff's claim should be dismissed, stricken and/or denied.

## II.     STATEMENT OF RELEVANT FACTS[1]

On October 20, 2016, November 2, 2016, November 14, 2016, November 29, 2016, December 13, 2016, December 21, 2016, January 12, 2017 and January 18 and 30, 2017, the Board convened for public hearing to receive testimony and evidence on charges brought against the Plaintiff by Thomas Ross, Director of Public Safety for the Village of Bolingbrook. (VOB 000179 - 000190). On or about September 29, 2016, Plaintiff was timely and properly served with charges which alleged his violation of various Department rules and regulation. (VOB 000001-000009). Thereafter, amended charges were served upon Plaintiff and his legal counsel on October 24, 2016. (VOB 000599-000608). These charges were promulgated against Plaintiff only after a Department review and investigation of various allegations of misconduct and disobedience by Plaintiff and two charge interviews. (VOB 000208-000272).

Plaintiff, at all times relevant, was a Sergeant in the Bolingbrook Police Department (VOB 000235). McRay at all relevant times resided in the Village of Bolingbrook. (VOB 000237). Tom Ross, at all times relevant was the Public Safety Director for the Village and responsible for supervising, overseeing and directing the operations of the Department and its personnel. (VOB 000720-000721).

The conduct and behavior of Department officers is governed, in part, by General Order No. 12. (VOB 000721). General Order No. 12 contains a partial list of offenses for which a violation could result in discipline, including dismissal. The Order also makes clear any Department employee is subject to discipline by a superior or chief of police for

---

[1] Defendants, Village of Bolingbrook Board of Fire and Police Commissioners, Barbara Provo, Major Jones, Prem Lalvani, Sandra Baldassano, Maurice Binns II, Ray Macri and Gretchen Schroeter, on July 7, 2017 filed a copy of the Record of Proceedings before the Board with this Court.

3

violating any of the directives contained in the Order or Rules and Regulations of the Village. (VOB 000217)

Prior to receipt of these charges, on September 2, 2016 Plaintiff was presented with Notification of Allegations, Formal Investigation and Order. (VOB 000229-231). As an Exhibit to this document was a list of misconduct under General Order No. 12 of which Plaintiff was accused to have violated. (VOB 000231). On September 16, 2016, Plaintiff was interviewed by Lieutenant Larry of the Bolingbrook Police Department. Plaintiff's legal counsel was also present at the interview. (*Id.*) The interview lasted for one hour and 19 minutes. (*Id.*) At the beginning of this interview, Plaintiff was informed that he was alleged to have violated several sections of General Order No. 12 including Section VII, Paragraph 2, 8 and 33 (VOB 000232).

Thereafter, charges were filed with the Board by Director Ross seeking discipline and dismissal of Plaintiff for violation of General Order 12. Such violations include:

- Association with a known felon and person involved in criminal activity, in violation of General Order No. 12, Section VII(8) including allowing a known felon to reside in his home in the Village;

- Violating a direct order by his superiors regarding the reporting of his relationship with a felon;

- Possession of controlled substance or medication without the approval and guidance of a licensed physician and knowledge of his superiors;

- Failure to cooperate in a police investigation in violation of General Order 12, Section VII(9);

4

- Failure to read, understand and comply with all rules and regulating orders, policies and procedures of the Department;
- Engagement in off duty conduct which adversely affects the morale and efficiency of the Department or which has a tendency to destroy public respect or confidence in the employee or Department.

(VOB 000005 - 000022)

Plaintiff's son, Jeremy, age 19 or 20 at all times relevant, was a convicted felon. (VOB 000723). Jeremy's felony conviction for the manufacture, distribution or possession of a look-alike substance with an intent was in place as of June 23, 2015. (VOB 001105). Plaintiff did not notify Director Ross, at any time before September of 2015, that his son was a felon. (VOB 001106).

On July 12, 2015, the Bolingbrook Police Department responded to a domestic battery call from Plaintiff's home (VOB 000514). Plaintiff's adult son, Jeremy, was identified as the alleged offender. (*Id.*) Jeremy admitted to the responding officers that he was in possession of cannabis and Xanax.

In September, 2015 there was a number of motor vehicle break-ins in the Village of Bolingbrook (VOB 000845). On September 12, 2015, Plaintiff's adult son, Jeremy was arrested and charged with felony burglary to a motor vehicle. (*Id.*) Jeremy was interviewed by Detective Henry Cunningham of the Department in regard to the arrest. During both interviews, Jeremy stated that he lived in Bolingbrook at the same address as the Plaintiff. (*Id.*) Thereafter Jeremy, was indicted for another felony on September 24, 2016. (VOB 000768).

5

Plaintiff did not inform Director Ross of his son's arrest for burglary until confronted with the information. (VOB 000723). It was only as a result of the September 12, 2015 arrest of Jeremy that Director Ross became aware that Jeremy was a convicted felon. (*Id.*). During this meeting Director Ross told Plaintiff that General Order 12's requirement that officers avoid regular or continued associations or dealings with persons they know or should know are persons under criminal investigation, or who have a reputation in the community for involvement in felonious or criminal behavior applied to him. (*Id.*) Director Ross directed Plaintiff to submit a memo to him regarding Jeremy's arrest and the nature of his contacts with Jeremy. Director Ross followed this up with a directive to Plaintiff that Jeremy was not allowed to live with Plaintiff. (VOB 000723-000725).

In July 2016, the Naperville Police Department was looking for Plaintiff's adult son, Jeremy, because of a 911 call. (VOB 000728). The call was traced to Plaintiff's home where, again, Jeremy was located. (*Id.*) Plaintiff was interviewed by Director Ross as a result of this incident and another indication that Jeremy was still living with him. McRay argued with Director Ross about Jeremy not living with him. (*Id.*) Director Ross made clear to Plaintiff that Jeremy's presence in Plaintiff's home was a violation of Department rules against association with felons and he needed to "stop it." (VOB 000728)

On August 20, 2016 and for several days thereafter, it came to the Department's attention that Plaintiff's son, Jeremy, was in Plaintiff's home in Bolingbrook while Plaintiff was out of town. The Department received reports that a woman at Plaintiff's house had been sexually assaulted and the victim of assault and battery allegedly by Plaintiff's adult son, Jeremy. (VOB 000503, 000729). Plaintiff suffered a theft of several items from his home including watches, a guitar, television sets, syringes, a handgun magazine,

6

ammunition and shoes. (VOB 001013). Plaintiff also thought his badge, uniform and possibly his service weapon were stolen as well. (VOB 000722). Plaintiff failed to report the theft of these personal items. (*Id.*) Department rules required Plaintiff to file a report regarding this theft. (VOB 000818-819).

Thereafter, the Department found a bottle of prescription medication in Plaintiff's unlocked desk in the Department. This medication bottle did not belong to Plaintiff and his possession of this medication without notifying his supervisors was in violation of General Order 12, VII (4). (VOB 000998).

In October 2016, Plaintiff's dog was involved in a fight with a neighbor's dog which resulted in the neighbor's dog's death. (VOB 000874-000878). Village ordinance required that Plaintiff's dog be impounded under the circumstances. (VOB 000874-000875). Plaintiff did not impound his dog as required by the Village Ordinance but said that the dog was initially staying with a friend in Darien but he then gave the dog to his ex-sister-in-law living in Wisconsin. (VOB 000876 – 000173).

After 9 days of hearing, the Board of Fire and Police Commissioners on February 13, 2017 issued its Findings and Opinion. (VOB 000642-000647). The Board found that the manifest weight of the evidence and testimony presented supported sustaining the amended charges against Plaintiff except for the charge that he failed to promptly report the loss of any municipal property/equipment. (VOB 000646) The Board determined that Plaintiff's misconduct constituted a substantial shortcoming that prevents him from being a police officer with the Village of Bolingbrook and ordered that he be discharged. (VOB 000647). These Findings and Orders were upheld in a later Amended Findings and Opinion issued March 8, 2017. (VOB 000679-000684). Thereafter, the Board heard

additional testimony and received additional evidence as to the recommended consequences for Plaintiff's misconduct. (VOB 000687). The Board determined that the mitigating evidence presented by Plaintiff did not change its decision to terminate his employment with VOB. (VOB 000688).

### III. STANDARD OF REVIEW

**A. Plaintiff's Administrative Review Claim is Not Properly Before this Court and Should Be Stricken**

As an initial matter, the Defendants question this Court's jurisdiction to hear this state court Administrative Review Action pursuant to 28 U.S.C. §1331. Case law is somewhat murky in deciding whether a federal court can, or should hear matters involving administrative review of a state agency's decision. *City of Chicago v. International College of Surgeons,* 322 U.S. 196 (1997). In this case the Court, in a tortured opinion, attempting to avoid earlier precedent, held that the City could remove to federal court a state court action for administrative review because the complaint also raised federal constitutional claims. However, the Court's earlier opinion in *Chicago R.I. and P.R. Co. v. Stude*, 346 U.S. 574 (1954) provides that a federal district court "does not sit to review an appeal action taken administratively, or judicially in a state procedure." *Id.* at 581.

Here, Plaintiff has "tacked" on his claim for administrative review of the Board's decision to an action alleging claims under the Constitution which are the subject of pending discovery. Plaintiff did not raise these constitutional claims before the Police and Fire Board and now wants this Court to review his claims. (See Plaintiff's Amended Complaint). The Illinois Administrative Review Act provides that action seeking review of an administrative decision must be filed in Illinois Circuit Court. 735 ILCS 5/3-109.

8

Defendants therefore requests that the Court dismiss and/or strike Plaintiff's administrative claim.

B.  **Standard of Review for Administrative Actions**

Assuming, for sake of argument, this Court, exercises jurisdiction, its review of an administrative decision to discharge an employee requires a two-step approach. *Ratzik v. Board of Education of City of Chicago*, 356 Ill. App. 3d 813, 823 (1st Dist. 2005). First, the Court must determine whether the Board's findings of fact and decision are against the manifest weight of the evidence and second, the Court must determine whether the findings sufficiently support the Board's conclusion and cause for discharge. The Board's findings are considered to be *prima facie* true and the Court may not reweigh the evidence or make any independent determination of facts. *Abrahamson v. Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). Courts may not substitute its judgment for that of the Board, and reversal of the Board's decision is not justified simply because the opposite conclusion is reasonable or because the Court might have ruled differently. *Id.* at 88. Questions of law are reviewed *de novo* while mixed questions of law and fact are reviewed under the clearly erroneous standard. *Outcome, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324 (2009).

## IV.  **ARGUMENT**

A.  **Plaintiff's Due Process Claims Lack Merit**

Plaintiff first attacks the Board's decision by claiming that the charges against Plaintiff were vague and ambiguous and thus, in violation of the Due Process Clause.[2] Plaintiff appears to argue that because there were so many factual allegations and

---

[2] We assume, for sake of argument, Plaintiff is referring to U.S. Constitutional process protections.

different incidents involved in the charge. He struggled to follow all of them and thus they were vague and ambiguous. (See Plaintiff's Memo, p. 9). Plaintiff's argument lacks merit for many different reasons.

Case law consistently provides that charges in administrative proceedings need not be drawn with the same precision required of pleadings in judicial proceedings although the charge must be sufficiently clear and specific to allow preparation of a defense. *Sudduth v. Board of Fire Police Commissioners*, 48 Ill. App. 2d 194, 196 (1964). The Notice of Charges served upon Plaintiff certainly meet the requirement set forth above.

The Charges and Amended Charges list, in detail, the factual basis for each charge along with the specific orders, Rules and Regulations of the Department alleged to have been violated by Plaintiff (VOB 000600-000608.). Within the Amended Charges Plaintiff is reminded of the questions and testimony during a previous interrogation in which he was first informed of his alleged rules/regulation/order violations and the specific rules his misconduct is alleged to have violated. (VOB 000604-000607). For Plaintiff to now assert that he was not clear or unsure of what he was being accused of, is simply not credible when examining the record.

The Court should also note that Plaintiff was represented by legal counsel throughout the public hearing and during his pre-hearing interview. The record is devoid of any assertion during these proceedings that the charges were so vague and ambiguous that Plaintiff did not understand what he was being accused of.

The *Nelmark* case cited by Plaintiff as support is easily distinguishable. In *Nelmark* the court determined that one of the charges the plaintiff was found guilty of was not even

10

remotely hinted at in the language of the charges proffered. This is not the case here. The charges for which Plaintiff was found guilty were stated within the Notice of Charges and drawn within enough specificity as required by statute. This Court should not entertain Plaintiff's attempt to stretch the constitutional protections in this manner.

**B. The Department's Rule Which Prohibits Association with Felons or Those Engaged in Criminal Activity Does Not Violate Any Constitutional Right of Plaintiff and is Not Unconstitutional on Its Face**

    1.   <u>Rule 12, Section VII (8) application did not violate Plaintiff's due process right</u>.

Plaintiff asserts that Department Rule 12, Section VII (8) violates Plaintiff's due process rights because it prohibited Plaintiff from associating with his son. (Plaintiff's memo, pp. 10-14.) Plaintiff argues that this Rule is an impermissible attempt to regulate familial relationship (*Id.*, p. 10). Plaintiff's argument lacks merit.

Plaintiff was employed as a sergeant with the Village Police Department. (VOB 000235). The Department has necessary rules for conduct and behavior of its officers. (VOB 000721). Community trust and the trust of fellow officers is a paramount consideration for the Department. (VOB 000731-000732, 000735).

In relevant part General Order 12, Section VII (8) or "Rule 8" as Plaintiff describes it, states as follows:

> B.    Employees shall avoid regular or continuous associations or dealings with persons they know, or should know, are persons under criminal investigation or indictment, or who have a reputation in the community or the Department for present involvement in felonious or criminal behavior. Exceptions: when as necessary to the performance of official duties, or where unavoidable because of other family or personal relationships of the employees.
>
> C.    If such family or personal relationships exist, then the employee shall make notification to the Chief of Police, via memorandum.

11

It is undisputed that Plaintiff has an adult son, Jeremy, who was a convicted felon and involved with current criminal activity within the Village of Bolingbrook, at all relevant times.

Plaintiff relies upon the United States Supreme Court decision in *Moore v. East Cleveland*, 431 U.S. 494 (1974) as support for his argument that the Department's Rule violated his fundamental right to familial association. *Moore* addressed a City's housing ordinance that, like many housing ordinances limited the occupancy of a dwelling to members of a single family. *Id.* at 495-96. However, the *Moore* ordinance contained an "unusual and complicated" definitional section that recognized as "family" only a few categories of related individuals. *Id.* 498. In so doing, it made a crime of a grandmother's choice to live with one of her grandsons. (*Id.* at 499). In its decision, the court struck down the City ordinance but the court recognized that the family is not beyond regulation. See *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).

Courts have long recognized police departments' rights to regulate the association of its officers with those engaged in criminal activities. In *Merrifield v. Illinois State Police Board*, 691 N.E2d 191 (4th Dist. 1998) the court was asked to review a very similar rule of the Illinois State Police ("ISP"). The ISP rules prohibit its officers from associating with persons involved in criminal activity or past involvement in felonious or criminal behavior, except where unavoidable because of other family relationships of the officer. *Id.* at 194. In *Merrifield*, an officer with ISP became involved in an intimate relationship with a convicted felon and thereafter married this felon. *Id.* at 195-196. The court held that the Board's decision to terminate *Merrifield* for his regular and continuous association with an individual he knew was a convicted criminal served as a basis for finding that he violated

12

Department Rules against any such association, even though the felon was his wife, and upheld the termination of the officer. (*Id.* at 199).

Similarly, in *Bautista v. County of Los Angeles*, 190 Cal. App. 4th 869 (2010), a terminated officer claimed that the Sheriff's Department's termination of his employment because of his personal relationship, and later marriage, to a known prostitute and heroin addict violated his freedom of association rights under the First and Fourth Amendments. *Id.* at 875. In rejecting, the plaintiff's arguments, the court stated that the Department's regulation prohibiting its officers from associating with those they know are engaging in criminal activity was not unconstitutionally vague or overbroad. *Id.* at 818-879, citing *Ortiz v. Los Angeles Police Relief Assn.*, 98 Cal. App. 4th 1288, 1314 (2002). The court further held that the Department's regulation against such association had merely an incidental effect on the right to intimate association and as such, the appropriate level of scrutiny is rational basis; that is whether the Department's prohibited-association policy was rationally related to a legitimate state purpose. *Id.* at 877-878. The court held that the Department has a legitimate interest in regulating the behavior of its sworn officers to minimize conflicts of interest and protect the credibility and integrity of the Department. (*Id.*)

Contrary to Plaintiff's assertion that his relationship with his son was the reason for his termination, it was Plaintiff's refusal to avoid his continuous and regular association with a convicted felon and person engaged in criminal activity in violation of Department Rules that served as one basis for his termination. The record is clear that Plaintiff's adult son was a convicted felon that regularly stayed at this home in the Village of Bolingbrook. (VOB 000964, 000966, 001001). Plaintiff failed and then later refused to notify

13

Department Director about his regular and continuous association with this felon. (VOB 000340).

For the above reasons and cases set forth above, Plaintiff's claim that his constitutional right to association was violated, must be rejected.

**C.     Plaintiff Fails to Present Facts That Would Show the Board's Findings and Decision Were Against the Manifest Weight of the Evidence**

The remainder of Plaintiff's memo contains nothing more than an extended laundry list in which he asserts the Police and Fire Board "got it wrong" in deciding his case. Plaintiff's second guessing and request for this Court to engage in second guessing the Board's decision should not stand as it is contrary to the clear legal standard for review.

The Court's review of an Administrative Review action is focused only on whether the Board's findings are against the manifest weight of the evidence. If there is anything in the record that fairly supports the Board's conclusion, it is not against the manifest weight of the evidence and must be sustained. *See Raitzik v. Board of Education of City of Chicago, supra*, citing *Finnerty v. Personnel Board of the City of Chicago*, 303 Ill. App. 3d 1, 12 (1st Dist. 1999). The record submitted as District's answer, and this response, requires that the Court sustain the Board's findings and decision.

The Board of Fire and Police was charged with deciding whether the Village of Bolingbrook Police Department established, by a preponderance of the evidence, the charges proffered against Plaintiff and his dismissal from the Department. The Board, throughout the course of 9 days of hearing, received and considered the testimony of many different witnesses and reviewed hundreds of pages of documentary evidence. Plaintiff was at all times represented by competent legal counsel. (VOB 00001-01459). At the hearings' conclusion, including closing arguments by counsel, the Board voted to

sustain the majority of the charges proffered by the Department and determined that Plaintiff's misconduct constituted a substantial shortcoming that prevented him from being a sergeant or police officer with the Department. (See VOB 000642-000647 and VOB 000687-000689).

Plaintiff initially argues that the Department failed to prove that he violated any order not to associate with his son because such order violates the due process clause and is unlawful. Defendants have earlier discussed and rebutted Plaintiff's due process arguments and incorporates same by reference here. As such, this argument should be dismissed.

Plaintiff goes on to assert that Plaintiff was not given an actual order not to associate with his son, that his interacting with his son were not regular or continuous, his son did not live with him and he did not fail to write a memo to the chief about his son's conviction. (Plaintiff's memo in support of complaint, p. 19). However, a review of the record reveals that the Department submitted credible testimony and evidence rebutting all of these assertions.

We ask the Court to take note that the Department's decision to terminate Plaintiff was not based on his relationship with his son, it was based on Plaintiff's refusal to stop his continuous and regular association with a convicted felon and person involved in current criminal activity. The person happens to be Plaintiff's adult son, however, it was the conviction and criminal activity of Plaintiff's adult son along with Plaintiff's regular association with him that served as a basis for the charges and dismissal. (VOB 000643-000644).

15

The facts show that Plaintiff's son was convicted of a felony in June 2015. Plaintiff did not notify the Department of his son's conviction until confronted with the Department's knowledge of this conviction in September 2015. (VOB 000758). The record also presents evidence of Plaintiff's regular and continuous association with his convicted son and his son's living at his home in Bolingbrook. (VOB 000964, 001001 and 000966). While Plaintiff disputes that his son lived with him and attempts to minimize the length of time his son "stayed" at his home, it is undisputed that his son Jeremy had a dedicated bedroom in his house; that he regularly stayed at his home before court appearances and for a few weeks after a "verbal altercation" with his mother and had access to his home by way of the garage code. (*Id.*). It is also undisputed that Jeremy kept clothes and toiletries at Plaintiff's home and when arrested or questioned by the police, said that he lived with Plaintiff at his home in Bolingbrook. (*Id.*). Other witnesses that knew Jeremy testified that he lived with his father, Plaintiff, in Bolingbrook. (VOB 000335, 001314 and 001315).

The record shows that Plaintiff's above actions violated a direct order against such association. Moreover, the record established that Plaintiff was notified on several occasions, verbally and in writing that association and/or living with Jeremy, because of his conviction and criminal activity, violated, General Order 12, Section VII (8) (B) and (C). Plaintiff expressed disagreement with the Department's directive to him and failed to comply with Director Ross' order to keep him advised on all charges and updates as it related to his son. Plaintiff explained his noncompliance by testifying that "it was not his (Director Ross') or anyone's business." (VOB 001112).

16

As such, while Plaintiff attempts to minimize and explain away his violation of orders set forth above, the record demonstrates Plaintiff violated the Rule in question and the Board's findings to that effect are not against the manifest weight of the evidence.

Plaintiff also disputes the Board's finding that he violated the Department's rule prohibiting the possession on use of controlled substances or medications, except with the approval and guidance of a licensed physician in Illinois and with the knowledge of his supervisor, by arguing that the intent of this rule was to prevent officers from being impaired on the job. (Memo, p. 29). Plaintiff's own interpretation of the rules does not rebut the Board's finding as he presented no evidence to support this view.

Plaintiff had a bottle of hydrocodone-acetaminophen prescribed to his son in his unsecured desk drawer (VOB 000997 - 000998). Plaintiff did not inform his supervisor that he had this prescription of medication. (*Id.*). The record, therefore, is clear that Plaintiff's conduct violated Order 12, Section VII (4).

Plaintiff goes on to claim that the Board's finding that he failed to cooperate with a police investigation is not supported by the record. (Memo p. 29 – 32). Plaintiff is wrong again. The Board determined that Plaintiff failed to file a police report regarding personal items missing from his home after his son Jeremy held a party there. (VOB 001013). Items missing from Plaintiff's home included several watches, television sets, syringes, hand gun magazine, ammunition and shoes. (VOB 000968 - 000969). Plaintiff was asked to file a report as to the theft of these items but did not do so. (VOB 000819, 000969). This Court should not disturb the Board's findings based on the facts before it.

The Plaintiff, incredibly claims that the record does not support a finding that Plaintiff's misconduct adversely affected the morale or efficiency of the Department or impact public trust. The record shows that Plaintiff, a sergeant with the Department:

- Regularly associated with and allowed his convicted felon son to live with him;
- Plaintiff's son engaged in burglary of Plaintiff's neighbors for which he was arrested by Department officers;
- Police officers were called to Plaintiff's home on multiple occasions because of his son's behavior including alleged assault and battery; and
- Plaintiff's son hosted a party in his home in which serious criminal activity, including a sexual assault, was alleged to have taken place. (VOB 000754 – 001129).

Given the cumulative effects of the above, the record before the Board sufficiently established the Board's finding that Plaintiff's action adversely impacted the Department's morale and trust.

The record establishes that Plaintiff failed to impound his dog after it attacked and caused another dog's death. (Tr. 448-449). Plaintiff's refusal to comply with this order supporting the Board's finding that his actions adversely impacted the Department's and public's trust.

Plaintiff's claim that the Board erred in making its decision is not born out by the record. The Defendants incorporate the Board record and its arguments herein and states that the Department's decision to terminate Plaintiff is fully supported by the record.

18

## IV. CONCLUSION

The Board of Fire and Police Commissioners of the Village of Bolingbrook's decision and findings reflect careful consideration of the testimony and evidence presented to them over the course of several days. Their findings of fact are not against the manifest weight of the evidence. There are no facts supporting any clear error in the Board's decision. As such, the Board decision should be upheld and Plaintiff's Complaint for Administrative Review denied.

Respectfully submitted,

**The VILLAGE OF BOLINGBROOK BOARD OF FIRE AND POLICE COMMISSIONERS; BARBARA PROVO, Chairwoman of the Board of Fire and Police Commissioners; MAJOR JONES, Vice-Chairman of the Board of Fire and Police Commissioners; PREM LALVANI, Secretary of the Board of Fire and Police Commissioners; SANDRA BALDASSANO, Member of the Board of Fire and Police Commissioners; MAURICE BINNS II, Member of the Board of Fire and Police Commissioners; RAY MACRI, Member of the Board of Fire and Police Commissioners: and, GRETCHEN SCHROETER, Member of the Board of Fire and Police Commissioners,**

By: /s/ Frank B. Garrett III
Frank B. Garrett III

Frank B. Garrett III (6192555) (fgarrett@robbins-schwartz.com)
Nikoleta Lamprinakos (6274018) (nlamprinakos@robbins-schwartz.com)
**ROBBINS SCHWARTZ NICHOLAS LIFTON & TAYLOR, LTD.**
55 West Monroe, Suite 800
Chicago, Illinois 60603-5144
312.332.7760
312.332.7768 – Facsimile

**CERTIFICATE OF SERVICE BY ELECTRONIC MAILING**

      I hereby certify that I electronically filed the Response to Plaintiff's Memorandum in Support of Complaint for Administrative Review with the Clerk of the Court using the CM/ECF system on this 6th day of November, 2017, which constitutes service on all counsel of record, registered filing users, pursuant to Fed. R. Civ. P. 5(b)(2)(D) and L.R. 5.9:

                                        /s/Frank B. Garrett III
                                        Frank B. Garrett III

672519v3